The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez, all persons having any manner or form of business before the Honorable. The United States Court of Appeals for the Fourth Circuit are admonished to draw a nine and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Be seated, please. I want to welcome everyone to the Fourth Circuit Court of Appeals this morning. We have three interesting cases. In the first case, which is 1845-75, the United States v. Arbaugh. Ms. Trodden?  Thank you, Your Honor. May it please the Court. The Court should remand this case for resentencing because the guideline range calculated by the District Court was incorrect and because the District Court failed to consider the unwarranted sentencing disparity factor as required by Section 3. Can you get that speaker a little closer to you? And because the District Court... That's a little better, yeah. Failed to consider the unwarranted sentencing disparity factor in Section 3553A, as well as failing to explain its reasons for imposing the term of supervised release as it did. Now, the fact... Lifetime supervised release. Yes, Your Honor. The facts of this case are ugly, and we don't dispute that. And clearly the District Court did make great efforts in attempting to reach a fair sentence for the defendant. But the reality that the facts in this case are bad makes it all the more important to calculate the guideline's range properly to give the Court an objective standard by which to judge Mr. Arbaugh. Similarly, the judge's efforts in sentencing him, while laudable, do not ultimately excuse her from considering all of the relevant sentencing factors. Now, with respect to... So why don't you tell us which factors she didn't consider? She didn't consider the unwarranted sentencing disparity factor in Section 3553A. There were arguments... The defense had presented a number of comparable cases under the statute of sentencing for Mr. Arbaugh, 2423. The government's... I thought that the District Court discussed those cases in some detail and why they were different during the course of the sentencing hearing. Not those particular cases. So the District Court discussed Bollinger, which was one of the cases, but not particularly... She actually discussed why it was different in a different context with respect to whether or not it was... Mr. Arbaugh's conduct was worse or better, or whether or not Mr. Bollinger had had the victims in his case had actually been at his orphanage. But the cases cited by defense... And he got more time than Mr. Arbaugh did. He did, but he received a much greater downward departure of variance. His maximum sentence was 60 years, and the guidelines called for a 60-year sentence. The government requested, and the court imposed in that case, a 25-year sentence. A number of the other cases cited by the defense had sentences that were, in fact, much lower. When you talk about the other cases that you cited, when I read your motion on the unwarranted sentencing disparities, you conclude that by the request that you make in the written motion, and I don't mean you, but your client, was to receive a sentence below the statutory maximum. That was the request that was made. And then so why, when the guidelines are revised, and the court ultimately imposes a 274-month sentence, your request was granted. You requested a sentence below the statutory maximum. You got that. So for the written motion, I take it that your motion was granted, and you were given even more than you asked for. The judge, after the sentencing guidelines were revised such that they were no longer at the statutory maximum, we requested a downward departure and a downward variance. We had already requested a downward departure, but even after the guidelines were revised... But you cited, but in doing that, so I get, so you made a request for variance. In essence, you got what you asked for, a guideline range below 300 months. And then your claim is, well, we remade that motion. So we made the motion, but once it was granted, we said, no, no, no, grant us even more. But in doing that, in the second request, you only cite to Bollinger. You don't cite any of those other cases. And as Judge Agee indicated, you wanted a disparity from Bollinger because Bollinger got more time than your guy. So how can we look to Bollinger to say, I mean, maybe the government wants to argue that you should have gotten 300 months instead of 274, but I don't see how you can use it to argue for a downward variance from the 274 months that you got. Well, in the oral argument, after the guidelines were revised, we actually referred the district court back to the briefing, which listed a number of cases. But the briefing was given, I mean, the briefing said a sentence below the statutory maximum, and you got that. Well, the briefing listed a number of cases. The briefing listed cases that showed sentences in the range of 15 years and below. There were defendants with comparable cases who were, one received a 15-year sentence, one received a 97-month sentence, one received a 78-month sentence. How many matters did he molest? One of the defendants, and it may have been the one who received either the 15-month sentence or the 90-month sentence, was factually similar to Mr. Arbaugh here, where he was charged with either one or two counts, but he admitted to molestation of 40 to 50 minors. Now, but in this case, he got, he pled to one. He was charged with and pled to one. One molestation of what, a five-year-old? Yes, Your Honor. But how many, under the evidence, how many had he molested there in Haiti? 21, Your Honor. 21? Yes. And all of them were young? All of them were minors, not all of them. I believe that minor victim one was the youngest. Okay. With respect to these- They were all between five and 16 years or something? Approximately. I think there was a 17-year-old in there. And his sentence was right in the middle of the guidelines that were calculated? It was slightly above the midpoint. I had referred to it in the midpoint as my briefing. I'm not very good at math. It was actually slightly above the midpoint. And so the midpoint, you say, was what? I believe the midpoint is 264 months. And he got 274? Yes. Pretty close. But the undue influence guideline, I think, is something else that the court should consider in this because that affects- Undue influence? Yes, Your Honor. That was one of the guidelines objections raised. And the district court relied solely on the application note to undue influence, which provides a rebuttable presumption for undue influence if there's a greater than 10-year age difference between the defendant and the victim. That particularly applied to the count that he pled to? Yes, Your Honor. It applied to minor victim one. He was 30-some years old. Yes. There would have been that age. The little boy was five. Yes.  But the district court did not rely on any other facts showing undue influence. They relied solely on this presumption. And that- Are you making a duplication argument or something else? Well, the result of using this presumption, which our argument is actually that it improperly expands the scope of the guideline beyond what is contained within the guideline under Stinson and under the Sixth Circuit case Cavus and the other cases cited in the briefing. So you're making more of an ultra-varies argument than you are a duplication argument? Well, it results ultimately in duplication because the age of the victim is already accounted for in the guideline. Now, of course, guidelines do permit double counting, but all of the cases that look at double counting within the guidelines generally are assuming that that's- Wouldn't the general rule on double counting is that you can double count all you want unless the guidelines specifically tell you you can't? It is. However, it presumes that it is the guidelines, that this is something that has been promulgated by the Sentencing Commission through the procedure authorized in Stinson where it's notice and comment and approval by Congress. Now, of course, the commentary is not subject to that procedure. The commentary, the Sentencing Commission can put forward on its own. And here, the comment to undue influence changes the undue influence guideline and makes it much broader than, in fact, it is. So the undue- So would it have solved your problem? Just accept if you have a problem. I'll accept that- Would it have solved it if the judge had simply said, regardless of what the commentary says, I find, based on my own judgment, that when you're more than 10 years older than a 5-year-old and you sexually abuse them, that that's undue influence. And so I make that as a factual finding, not a presumption, but just a factual finding that many of us would find eminently reasonable to assume that the abuse of a 5-year-old involves undue influence when you're in your 30s. I think it would be a different appeal if the judge had found that. I think the problem still exists. What I want to know is, does it solve your problem? I'm trying to understand your problem. I understand that my hypothetical is not your case. Right. What I want to know is whether my hypothetical would solve your problem. I don't think it would, Your Honor, because the undue influence guideline is intended, it's victim-focused. So courts that have considered it have said, you have to show that there was a victim who was actually influenced. That's the lay case out of the Sixth Circuit. But the guideline itself doesn't say that, right? Well, the guideline says, it has two parts. The first part is it applies if the defendant had misrepresented his identity and used that misrepresentation to persuade the minor, to convince the minor to engage in prohibited conduct, or the defendant otherwise unduly influenced the victim. And it's that otherwise unduly influence. So the Supreme Court, when they have looked at the word otherwise, using A.U. Stem Generis, the canon of construction, says that otherwise looks back at the kind of thing that we were mentioning before. What about can the court consider as part of this overall view on not just the presumption from the commentary, but the actual guideline on undue influence, the violation of the position of trust as part of that whole analysis? The fact that it might support a violation of position of trust might also support undue influence. Didn't you have that in this case? The judge determined that the abuse of trust guideline did not apply in this case. Well, even though the guideline may not have implied, we have lots and lots of cases where the guideline itself may not apply, but the conduct that would have underlain that is still a factor that's considered when you're trying to compute the totality of the circumstances. And it could if that conduct actually influenced the victim. So the undue influence requires that it has some impact, some subjective impact on the victim, and the undue language suggests that it's not just any influence, otherwise undue would be surplusage. So it must be some wrongful influence. In United States v. Chiswell, which is a Sixth Circuit case, considering this guideline, they looked at the undue and the influence together. I don't want to overbear, I mean, because your time is running out here, but it seems like to me if you have a five-year-old victim, you're not going to get direct evidence that says, my church leader exercised undue influence when he used his position of trust to molest me. I mean, it just seems like to me that that's an application of common sense from human experience that the trial judge is entitled to make. The undue influence guideline is geared not just at, it's geared at some wrongful application of trust. I think it's not just being a trusted adult. Separate from abusing a five-year-old? I mean, that seems fairly wrongful. Certainly, and if the guidelines, if the Sentencing Commission thought that there weren't something else required, they would have just said, otherwise influenced. Because we're already talking about the abuse of a minor in this guideline. The guideline's already talking about the sexual abuse of a minor. So the use of the influence itself must have been undue as well. And again, looking back at the previous section of that, it's lying or misrepresenting to the minor in order to get that influence. What do you mean? Lying to him about telling him he's going to be nice to him or take care of him or feed him or something? Those could be evidence of undue influence. This five-year-old, does the record show that he was an orphan or had a home? No, Your Honor. Anything like that? So what the record shows as to this five-year-old is that, and the facts are scanty as to him. There's no victim impact statement from him. The abuse happened one time in the minor victim one's home when he and the defendant were taking a nap together, as I understand it. But there's no indication that, if you look at the ways in which other courts have applied the undue influence guideline, they've looked at have there been threats, has there been violence. There's none of that here. Has there been other types of coercion? Courts have applied the undue influence guideline where defendants have taken new pictures of the victim or given the victim drugs or taken the victim's identification or told the victim that they loved them or told the victim that they would disclose what they've done. There's no evidence of that here. And so being more than a trusted adult is necessary to get the undue influence guideline. Otherwise, it would just be an influence guideline and not an undue influence guideline. I see my time is up. Thank you. Thank you. You've saved a few minutes. Ms. Rottenborg? Good morning, Your Honors. May it please the Court, Laura Rottenborg on behalf of the government. Appellant Arbaugh challenges a Heartland Guideline sentence by asking this court to transform procedural reasonableness into procedural perfection, and that is not what the law requires. In Arbaugh's view, the district court had to have surgically dissected his sentencing memorandum and his oral argument in order for the district court's careful and reasoned sentence in this case to have passed muster before this court. But that surgical dissection is not required by Supreme Court law or by this court's law. Instead, what is required is that the court set forth enough, not all, but enough of its analysis so that this court of appeals does not have to guess as to the district court's thinking and that this court of appeals can confirm that the district court conducted an individualized assessment of the 35-3A factors to the facts and circumstances of this case and therefore can comfortably defer to the trial court's discretion. And that's exactly what Judge Dillman did here. There were two sentencing hearings. The first hearing was continued so that the court could carefully research the cases cited by the defendant and properly calculate the guidelines. She then issued an opinion, reconvened the sentencing hearing, and engaged counsel on all portions of their argument. She then issued her sentence. It includes four pages of transcript assessing the 35-53A factors, noting the heinous nature of the crime, the number of victims, the duration of the offense, the lack of remorse of the defendant, the persistence of the defendant even when his minor victims started becoming abusers themselves. And she focused her analysis on the need to protect the public. And it was this factor that guided both her sentence in terms of the term of incarceration and the term of supervised release. Judge Dillman did what the law required, and this court does not have to guess as to why she imposed the sentence she did. Her analysis is indeed reasoned and should be affirmed on appeal. There were a couple of things that they raised that your opponent there didn't get to. Was it a lifetime supervised release and restrictions on use of the computer? Yes, Your Honor. Tell us about those very briefly, if you would. Yes, Your Honor. And why they're justified. As Your Honor knows, the recommended guideline term of supervised release was indeed life. Mr. Arbaugh received a sentence of 23 years of incarceration to be followed by lifetime supervised release. And he was, what, 35 years old? I do not remember his exact age, Your Honor. That sounds right. This wasn't going to kick in until he was getting close to 60. He was a little older than that because he was 38 years old at the time he molested the 5-year-old. It was a 33-year age gap. So he had to do this 23-year sentence,  Yes, Your Honor. And he didn't like that supervised release period, and he didn't like being restricted from using the computer. And a point of clarification there that's important, Your Honor, is he's not restricted from using his computer. I see. The restrictions allowed probation, warrantless monitoring, and search of his computer usage. Yeah, that's good. But this is not the case where internet usage was restricted or banned or computer usage was restricted or banned. You don't want to keep him away from minor porn viewing. Yes, Your Honor. Clearly the court was concerned about Arbaugh's likelihood of recidivism and wanting the probation officer the opportunity to engage in a warrantless search of his electronic devices to ensure that recidivism was not occurring. Now, are those kind of restrictions recommended by the guideline? Yes, Your Honor. Are they recommended by SORNA? Yes, Your Honor. They are consistent with the recommended SORNA terms and conditions for supervised release for sex offenders. That's the computer usage? Yes. What about the lifetime thing? Is that recommended by the guideline? Yes, Your Honor. The guideline term of supervised release is five years to life, but the policy statement and the guideline say that the recommended term of supervised release for this case is life. Your opposing counsel didn't have a chance, as Judge King indicated, to get to these points. But what I derived from the briefing was two particular issues. One, that Mr. Arbaugh requested a five-year, the minimum, supervised release. And their point is the district court didn't articulate why five years would be denied and life would be opposed. And separately, there was no articulation of the reason why the computer restrictions were opposed. And that because of the lack of those explanations, it's not reviewable on appeal. That is their argument, Your Honor. All right, so tell us why you disagree. I'll address the first one in turn, if that's okay. Yes. With respect to the argument that they requested a five-year term of supervised release, and therefore the court should have engaged in a more fulsome discussion as to why five years was not appropriate, it's important to note that in their sentencing memorandum, they did not ask for five years. They conceded that it would be likely many more years. And over the course of the two sentencing hearings, they never once asked for a term of supervised release of any specific duration until the very last sentence of the oral argument at the second hearing. And then in the most perfunctory and passing of fashions, they said in a boilerplate way, please give us five years of supervised release, et cetera, et cetera. You're saying they really knew they weren't going to get any five years. Nor did they ask for anything close to five years in any meaningful fashion to put the court on notice that this was an area that needed further engagement with counsel and further explanation than what you provided on the record. Did any of the reasons that they provide for the sentence reduction, based on your read, did they go to this question at all? I mean, I understand your idea that they didn't raise it. You know, if you're going to ask for something, you have to give reasons. You can't just make conclusions. But could we look at the arguments that defense counsel made with respect to the sentence and read that they applied such that the court would have understood the rationale for only wanting five years of supervised release? Respectfully, no, Your Honor. I believe opposing counsel's arguments were directed more fulsomely at the terms and conditions of the release, recognizing that release would indeed be very long, and wanting to make sure that her client's constitutional rights were protected during that very lengthy duration of supervised release. And the court engaged extensively on that issue, granting some of their requests for modifications of the terms, not imposing all of the standard sex offender conditions, and trying to hear them where they were at in the argument, which was to make that lengthy period of supervised release respectful of the defendant's liberties and not resulting in a greater deprivation of those liberties than necessary. Additionally, sentencing is a unitary sentencing package, and Judge Dillon spent a very long time explaining 3553A factors. And as this court knows, of course, most of those factors are the same factors the court must consider under 3583D for whether or not a term and condition of supervised release or the duration of supervised release is appropriate. The court, in essence, is being asked to have said, ditto, three times, here's my five pages of reasons for the term of incarceration, ditto for the supervised release, and ditto for the terms and conditions of supervised release. Well, we do have cases, though, that seem to say something to the effect of if a defendant asks for a specific term in their sentence, the district court's obligated to say something about why that request for a term is not accepted. And here, there's no specific articulation of five years is just too short because of all the reasons that I set out in my 3553A analysis. Now, that may be too nitpicky, but there are cases that would seem to indicate that something along that line is required. That's certainly true, Your Honor, and if Judge Dillon had said those words, I doubt I'd be here today on this argument. And hopefully that's what will happen in the future. But because she didn't utter those specific words, does not render her sentence here procedurally unreasonable when read in the context of the entire record. Were you saying a harmless error applies to that? We believe that they must establish plain error review because it was waived to the extent there's any... Now, which part was waived now? The request for a five-year term of supervised release and whether or not the court had to engage more on its reasons for imposing lifetime term of supervised release. Now, why do you say it's waived? Because I'm looking at JA 225, and there's a specific request there for five years. It may have been late in the ballgame, but it was before the court before they imposed the sentence. Yes, Your Honor. They did say those words at the very end. In context, it did not put the court on notice that that was a meaningful request. But even under an abusive discretion standard, the court here engaged counsel on each of the 3553A factors, the same factors that underlie whether or not a lifetime term of supervised release is appropriate, and put in the context of that lengthy colloquy and her pronouncement of sentence, which is a unitary sentencing package, it is fairly read that the reasons she articulated on the record apply an equal force to the term of incarceration as to the term of supervised release. Judge Dillon's primary focus in her explanation was on the need to protect the public. And when opposing counsel argued that she could protect the public through a lesser term of incarceration and a longer term of supervised release, she rejected that assertion. She specifically stated on the record that she did not think that a lesser term of incarceration would sufficiently protect the public. And she stated that a long term of incarceration was necessary to protect the public, and it's that same reason that a long term of supervised release is necessary to protect the public from somebody who commits as heinous of crimes and pervasive of crimes as Arbaugh did here. Turning very quickly to the undue influence point to address some of the court's questions in the opening argument, the commentary of the guidelines are replete with examples where the guideline interprets, defines, or otherwise, or excuse me, the commentary interprets, defines, or otherwise explains the guidelines. In effect, Arbaugh is asking this court to find that when a commentary defines something in the guideline or interprets it, it should not be given authoritative weight. But that is exactly the opposite of what the Supreme Court has required. In Stinson and Estrada, the Supreme Court has stated that the commentary is authoritative. It is binding unless it is otherwise inconsistent with federal law or the Constitution or inconsistent with the guideline itself. Here, the commentary explaining that a 10-year age gap, the relative age difference between an adult and a minor victim has a rebuttable presumption of being indeed capable of overcoming the voluntariness of the victim, is neither inconsistent with the guideline nor inconsistent with federal law nor the Constitution. And therefore, it is authoritative and binding on the district court, and she properly followed it. More fundamentally, Arbaugh at the district court did not even endeavor to rebut the presumption. In each of the cases cited by Arbaugh, the defendant put on a defense on this issue. For example, they said, well, the victim initiated the sexual contact or the victim sent suggestive text messages or the victim was dressed in a sexually provocative way. In this case, Arbaugh has never once, neither at the district court in New York nor here today at the Court of Appeals, even attempted to offer any facts to rebut the idea of undue influence here. Indeed, the influence is undue on the face of this case, a 38-year-old man and a 5-year-old child. What Arbaugh's argument amounts to is a purely legal argument that the commentary cannot provide guidance on how to apply the guideline, and that legal argument should be rejected. If the Court has no further questions, I'm happy to stand and then breathe. Thank you very much. Ms. Trible? You don't agree with all that, do you? I don't, Your Honor. I'll start with the undue influence point first. I would say that the commentary is not replete with examples of a situation like this. In fact, the only other guideline where the comment expands the scope of the guideline similarly to this is exactly like this. In 2A3.2, there is a mirror image of this guideline. But elsewhere, the comments do not expand the scope of the reach of the guidelines to such a degree as this. Why do we say that it expands the scope? I mean, we talk about evidentiary burdens and presumptions in the law generally all the time, and we don't say that where there's an evidentiary presumption or that there's a shifting burden, that that changes the underlying standard, right? We just say that the burden of persuasion or production shifts or there's a presumption here or not there. That doesn't to me seem like it changes the standard itself. It's just the proof that's required. Well, it changes what the government needs to prove. The government no longer needs to prove that he actually influenced minor victim one or that that influence was undue. Now the government only needs to prove that he was older by 10 years than minor victim one. To create a presumption that's then fully rebuttable by the defendant to put forward any evidence to the contrary. And if so, obviously the burden of persuasion remains with the government to then disprove any evidence that you put forward. You chose not to put any evidence forward. I understand that. But it seems like to me that doesn't change the underlying standard. Doesn't expand the guideline. It just adopts a, you know, in essence a burden shifting evidentiary issue. We don't think that McDonnell Douglas changed the standard for Title VII. It just provided a burden shifting method for doing it. And that seems like that's exactly what the guideline is doing here. So first of all, there was a factual discussion on the record about whether or not the guideline applied. At 107, at JA107, the government had argued that the guideline applied based not only on the age difference, but also as the court has recognized based on Mr. Arbaugh's role as a well-respected missionary in the community. And counsel pointed out and argued that that would not give rise to undue influence in this situation because there was no evidence in the record that that influenced minor victim one, who's approximately five years old at the time. There was a factual argument about this. Now the issue is that the record has very little facts about what influenced minor victim one or what didn't. But this court has recognized that consistent with due process, the government bears the burden of proving an enhancement. And here the government is able by virtue of this comment to sidestep its burden of proving undue influence and simply prove that the defendant was older than minor victim one. So that changes the nature of the stance. Well, they had to prove he was 10 years older, and here he was 30-some, 33 years older. Sure, but under that, again, his age is only his age. Does it prove that he unduly influenced minor victim one? As I pointed out, the record lacks the kinds of evidence of undue influence that you see in other cases. Now with respect to the other arguments that the court asked the government about regarding the computer conditions and the terms of supervised release, of course, our position is that this was not way of the request for a five-year term of supervised release. We did request a five-year term, and there was factual support in the record for why that term. Would that always be true? I mean, you file a sentencing memorandum. There's multiple sentencing hearings. You have extensive argument on the issues, on lots of issues. It's not like you're just raising one. You raise a kitchen sink of issues, right, literally everything that's raised. And then the very last sentence, you're like, and we'd like five years. And that seems to place a lot on the district court to keep track. I mean, the district court, as you acknowledged, did a very good job here of trying to do their best. But when the defense counsel doesn't raise it in a meaningful manner and until the very end, that places a pretty high burden on the district court and maybe the attorney's office to help the district court to keep each of those perfunctory, last-minute arguments that you throw up on the wall together and make a comment about it, doesn't it? Well, the government seems to be arguing that this wasn't a real request. But, of course, it was because we asked for it. And that's what's required under Fourth Circuit precedent. However, even if this court were to determine that plain error review replied, the recent decision of United States v. Ross would still require remand because that was a case under plain error review where the district court did not articulate any reason for imposing a lifetime term of supervised release for conditions. And the court found that that was inappropriate under the circuit precedent and remanded. So even if we are in plain error review, which we don't believe that we are, but even if we were, under Ross, remand would still be appropriate for that reason. With respect to the computer conditions, the reason that the computer conditions were important, and counsel argued this, was because Mr. Arbaugh had worked in the computer field before and the limitations placed on him by those conditions would prevent him from potentially working in the future. Those conditions had no access to- And you objected in the district court to the imposition of these restrictions? Yes, Your Honor. And there's no evidence of any computer crime in this case. This was not a child pornography case. There were no explicit pictures of the victims. There was no nexus to computers whatsoever in this case. But your argument here isn't to the merits of it, as I understand it. Your argument is that the district court didn't give an explanation as to why these particular restrictions were opposed. That's true, Your Honor, and they didn't. The judge, essentially, in announcing her decision as to the restrictions, only said, I'm imposing these restrictions, and I'm paraphrasing here, but if you think they need to be changed in the future, you can ask for them to be changed. But, of course, that's not the standard of the district court. For all their diligence, still is required to get it right the first time. So for those reasons, Your Honor, we would ask that the sentence in this case be remanded. We appreciate it. I want to thank you and your office. It's a tough case, and you all have done a commendable job, and the prosecutor, Ms. Rottenborg, as well. We appreciate it very much. We'll come down and greet counsel and then go to the next case.
judges: Robert B. King, G. Steven Agee, Julius N. Richardson